# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARAH POLANSKY, Administratrix of the Estate of Doris Polansky, deceased, and TIMOTHY POLANSKY, an adult individual, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-296 |
| VAIL HOMES, INC., a Maryland limited liability company, TIMOTHY MEERSCHAERT, an adult individual, CHRISTOPHER MEERSCHAERT, an adult individual, and MOUTAINEER LOG AND SIDING COMPANY, INC., a Maryland corporation, | ) ) ) ) ) ) ) ) ) | Judge Nora Barry Fischer |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

I.  INTRODUCTION

This lawsuit arises from Defendant Mountaineer Log and Siding Company, Inc.'s, ("Mountaineer"), sale of a log cabin kit to Doris and Timothy Polansky, (the "Polanskys"), and subsequent construction of same by Defendant Vail Homes, Inc., ("Vail Homes" or "Vail"), and its operators Defendants Timothy Meerschaert and Christopher Meerschaert. During the pendency of this action, Doris Polansky died. (Docket No. 167). Subsequently, the caption was amended and Sarah Polansky was added as a Plaintiff as administratrix of her mother's estate. (Docket No. 175). Plaintiffs are Timothy Polansky and Sarah Polansky (collectively "Plaintiffs"). Pertinent here are Plaintiffs' negligence and loss of consortium claims against Mountaineer at Counts III and IV of their Third Amended Complaint.[1] Presently before the

---

[1] Plaintiffs have also asserted a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Act against Mountaineer, but have not addressed same in the instant motion.

1

Court are Mountaineer's Motion for Partial Summary Judgment, challenging the sufficiency of the Plaintiffs' evidence as to those counts and Plaintiffs' opposition thereto.[2] (Docket Nos. 171, 178). The Motion has been fully briefed and the Court held oral argument from counsel at a Motion Hearing on February 25, 2016. (Docket No. 193).

After careful consideration of the parties' positions and having evaluated all of the evidence in light of the appropriate standard governing motions for summary judgment, and for the following reasons, Mountaineer's Partial Motion for Summary Judgment has been DENIED. (Docket No. 195).[3]

II. BACKGROUND

The following facts are undisputed, except as indicated, and are pertinent to the instant motion.[4] The Polanskys and Mountaineer entered into an agreement to purchase a log cabin home package.[5] (Docket No. 173 at ¶ 3). Mountaineer supplied the Polanskys with a list of local builders near Deep Creek, Maryland, and Mountaineer did not select, hire, or guarantee the

---

[2] Plaintiffs have alleged negligence and loss of consortium against Vail Homes. (Docket No. 76 at Count I, ¶¶ 19-24; Count II, ¶¶ 25-27). They have also asserted claims of negligence, loss of consortium, and breach of duty under the Pennsylvania Unfair Trade Practices and Consumer Protection Act, against Mountaineer. (Docket No. 76 at Count III, ¶¶ 28-24; Count IV, ¶¶ 34-36; Count VIII, ¶¶ 71-86). Plaintiffs contend that Vail Homes and Christopher Meerschaert breached their contract, violated their duty of implied warranty of workmanlike construction and breached their duty under the Pennsylvania Unfair Trade Practices and Consumer Protection Act. (Docket No. 76 at Count V, ¶¶ 37-52; Count VII, ¶¶ 61-70; Count VI, ¶¶ 53-60). Plaintiffs also maintain that Timothy Meerschaert has co-mingled funds and finances with Vail; thus, Plaintiffs seeks to hold Timothy Meerschaert liable for Vail's debts. (Docket No. 76 at Count IX, ¶¶ 87-93). The other Defendants have not filed motions for summary judgment. Defendant Timothy Meerschaert has not been served. Plaintiffs intend to try to locate Timothy Meerschaert and to request leave to serve him if he is located. (Docket No. 177 at 3). Default judgment was entered in favor of Plaintiffs against Vail Homes, LLC as to all claims asserted against Vail. (Docket No. 106 at 2). Similarly, default judgment was entered in favor of Mountaineer against Vail as to all cross-claims asserted by Mountaineer against Vail. (Docket No. 106 at 2). Plaintiffs do not intend to seek a default judgment hearing against Vail, but will submit all issues of damages and apportionment of fault regarding Vail to the ultimate finder of fact. (Docket No. 177 at 4).
[3] The Court denied Mountaineer's Motion for Partial Summary Judgment in a preceding order. (Docket No. 195).
[4] In addition to the undisputed facts, Plaintiffs submitted Additional Statements of Material Facts (Docket No. 180), to which Mountaineer never responded nor has it presented any evidence refuting same. Thus, for the purposes of the instant motion, the facts, as set forth in Plaintiffs' Additional Statements of Material Facts, are deemed admitted by Mountaineer, in accordance with L.Cv.R. 56(E), and are relied upon by this Court in making its ruling. *See Pondexter v. Allegheny Cnty Hous. Auth.*, 2012 WL 3611225, at *1 n.2 (W.D. Pa. Aug. 21, 2012) (Fischer, J.).
[5] It is disputed as to whether Plaintiffs knew that the package was a "non-kit" package. (Docket No. 180 at ¶ 3).

performance of any of the builders. (Docket No. 173 at ¶ 6). On November 30, 2009, the Polanskys signed an acknowledgement that they were purchasing a materials only package and that the Polanskys were responsible for investigating, researching, and hiring a builder themselves. (Docket No. 173 at ¶ 8). Mountaineer provided building plans and/or blueprints, a construction manual, the logs, and building materials. (Docket No. 173 at ¶ 9).

The Polanskys initially selected Robert Metts to build their home, using the materials and plans purchased from Mountaineer. (Docket No. 180 at ¶ 35). But, Mr. Polansky testified that Jack Barnhart ("Barnhart"), an agent of Mountaineer, told them that Metts lacked the competence, experience, and ability to build and construct log homes. (Docket No. 180 at ¶¶ 39, 40). Subsequently, they decided against using Metts because he doubled the price due to his belief that the home was a non-kit home.[6] (Docket No. 173 at ¶¶ 10-11).

The Polanskys were then left to find another builder and they continued to communicate with Barnhart concerning same. According to Mr. Polansky, Barnhart recommended that they use Vail for the construction of the home. (Docket No. 180 at ¶ 36). Meerschaert Construction, Vail's predecessor company, was on the initial list of contractors provided by Mountaineer to the Polanskys. (Docket No. 174-8). Barnhart admitted that he provided Mr. Polansky with Meerschaert Construction's phone number. (Deposition of Barnhart, Docket No. 174-2 at 96:9-10). Mr. Polansky explained that Barnhart showed them completed homes that he represented were built by Vail. (Docket No. 180 at ¶ 41). Barnhart received a referral fee of approximately $2,000 from Vail, which was not disclosed to the Polanskys. (Docket No. 180 at ¶ 38; Deposition of Christopher Meerschaert, Docket No. 181-3 at 123:17– 126:13; Docket No. 181-1 at ¶ 10). The Polanskys later learned that the completed homes shown by Barnhart were not

---

[6] It is disputed as to why Metts doubled his price. Defendant Mountaineer maintains that Metts doubled his price due to his inexperience with non-kit homes, (Docket No. 173 at ¶ 11), while Plaintiffs state that he doubled his price because of the additional time needed to complete non-kit homes. (Docket No. 180 at ¶ 11).

3

actually built by Vail and were not representative of Vail's experience building such homes. (Docket No. 180 at ¶ 40; Docket No. 181-1 at ¶ 8).

Ultimately, the Polanskys, upon the recommendation of Barnhart, entered into a contract with Vail Homes on or about April 5, 2010, to build their home, and shortly thereafter, Vail Homes began the construction of the residence. (Docket No. 173 at ¶¶ 12, 16, 17; Docket No. 180 at ¶ 36). The Polanskys understood that Vail Homes would perform all of the construction work. (Docket No. 173 at ¶ 18). The Polanskys became dissatisfied with the construction quality during the building process. (Docket No. 173 at ¶ 19).[7] Despite these problems, the Polanskys moved into the home at some point after April of 2010.[8]

One of the prominent construction problems in the newly built log home was that alleged faulty design and/or construction led to water pooling on the deck. (Docket No. 173 at ¶ 26). According to Plaintiff's construction expert, Frederick R. Steding,[9] the gutters, as designed, were too small to effectively catch water. (Docket No. 155-5 at 2; Docket No. 173 at ¶¶ 24, 25). Mr. Steding also opines that the shingles were improperly installed covering a portion of the gutters preventing water from entering and that there were no gaps inserted between the deck boards. These problems collectively caused water to pool over time, accumulate, and enter the house per Steding. (Docket No. 173 at ¶¶ 22, 23).

It had been raining heavily the evening of April 23, 2011. (Docket No. 186 at ¶ 1). That night, Mrs. Polansky walked outside onto the deck, slipped, and fell on water that had formed on the "ponded" area of the deck. (Docket No. 173 at ¶ 27; Docket No. 76 at ¶ 18). Due to her fall,

---

[7] There are disputes as to whether the Polanskys were aware of any specific issues with the construction during the construction period. (Docket No. 173 at ¶¶ 20, 21; Docket No. 180 at ¶¶ 20, 21).
[8] The parties do not stipulate as to when the Polanskys moved into the home. However, it is clear from the facts presented that they moved in at some point after the contract was entered into on April 5, 2010 and before April 23, 2011.
[9] Mr. Steding is an "[e]xperienced professional in the construction industry since 1972," and has been a partner or owner of various construction companies. He has extensive experience in both commercial and residential construction, and has a number of specialties. (Docket No. 155-6).

she suffered a fractured left ankle. (Docket No. 173 at ¶ 28). Mr. Polansky did not see her fall as he was inside the house watching television. (Docket No. 173 at ¶¶ 29, 30). Yet, he heard his wife's cries for help and immediately came to her aid. (Docket No. 180 at ¶ 42). He observed that she was visibly shaken. She told him that she had fallen after slipping on the wet surface of the deck. (Docket No. 180 at ¶ 42). While outside, he saw the condition of the deck where water had pooled. (Docket No. 181-2 at ¶¶ 4-6).

Mrs. Polansky required medical attention in the days following. While she was being treated, Mrs. Polansky stated to several individuals, including Gregory B. Christiansen, M.D., that she was injured due to her slip and fall on the wet surface of her home's deck. (Docket No. 180 at ¶ 43). Her statements to the medical providers were memorialized in the treaters' medical reports. (Docket No. 155-1 at 1; Docket No. 181-4 at 4).

As noted, there were no eye witnesses who observed the slip and fall accident. Counsel for Mountaineer requested to depose Mrs. Polansky; however, she never testified due to her multiple medical conditions, (Docket No. 173 at ¶ 33), before her death.

III. PROCEDURAL HISTORY

Mountaineer filed its Motion for Partial Summary Judgment and Brief in Support on October 30, 2015. (Docket Nos. 171, 172). Plaintiffs countered with their Response in Opposition, Brief in Support, and Responsive Concise Statement of Material Facts and Additional Statements on December 15, 2015. (Docket Nos. 178, 179, 180). Mountaineer submitted its Reply Brief and Concise Statement of Additional Material Facts on January 12, 2016. (Docket Nos. 185, 186). Mountaineer failed to respond to the additional allegations raised by Plaintiffs in Docket No. 180. Plaintiffs filed their Sur-Reply Brief in Opposition and Counter Concise Statement of Facts on January 22, 2016. (Docket Nos. 190, 191). The Court held a

5

hearing and oral argument on February 25, 2016. (Docket No. 193). Subsequently, Mountaineer filed its Supplemental Appendix to its Motion for Partial Summary Judgment on February 26, 2016. (Docket No. 194). As no further submissions have been made, the Motion is fully briefed and ripe for disposition.

IV. LEGAL STANDARD

It is well-established that summary judgment is appropriately entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citation omitted). In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. *See Montone v. City of Jersey City, et al.*, 709 F.3d 181 (3d Cir. 2013). Rather, the Court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-movant. *Watson v. Abington Twp.*, 478 F. 3d 144, 147 (3d Cir. 2007).

Under Local Rule 56(E) ("L.Cv.R.56(E)"), undisputed facts "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." W.D. Pa. L.Cv.R. 56(E) (2013). In prior cases, this Court has strictly applied L.Cv.R. 56(C) and L.Cv.R. 56(E). *See Janokowski v. Demand,* 2008 WL 1901347, at *1 (W.D. Pa. Apr. 25, 2008) (defendant's statement of material facts were deemed admitted for the purpose of summary judgment because of the plaintiff's violation of Local Rule 56.1(c)); *see also GNC Franchising LLC v. Kahn,* 2008

WL 612749, at *1 (W.D. Pa. Mar. 3, 2008) (the facts set forth in plaintiffs statement of facts were deemed admitted by defendants due to defendants' violation of Local Rule 56.1(E)); *Ferace v. Hawley,* 2007 WL 2823477, at *1 (W.D. Pa. Sept. 26, 2007) (citing *Benko v. Portage Area Sch. Dist.,* 2006 WL 1698317 (W.D. Pa. June 19, 2006)).

V. DISCUSSION

a. Mountaineer's Position

Mountaineer seeks summary judgment on Plaintiffs' negligence and loss of consortium claims, arguing that Plaintiffs have failed to adduce sufficient evidence to demonstrate the element of causation. (Docket No. 171). Specifically, Mountaineer contends that the evidence of record is insufficient to prove that its actions were a factual cause of Mrs. Polansky's purported bodily injuries during the April 23, 2011 slip and fall. (Docket No. 172 at 9). In this regard, Mountaineer asserts that the proffered evidence about the cause of Mrs. Polansky's injuries, including the statements attributed to her, amounts to inadmissible hearsay leading to conjecture, or speculation. (Docket No. 172 at 9; Docket No. 185 at 2). Mountaineer, alternatively, contends that even if there is enough evidence to show that its actions were a cause in fact, Plaintiffs have failed to prove that its actions were a proximate cause of Mrs. Polansky's injuries. (Docket No. 172 at 10-11).

b. Plaintiffs' Response

Plaintiffs counter that they have met their burden to present sufficient evidence to show a genuine dispute of material fact on their negligence and loss of consortium claims against Mountaineer. (Docket No. 179 at 10; Docket No. 191 at 1-3). Plaintiffs maintain that cause in fact is established on the existing record as Mrs. Polansky's statements to her husband and treating physicians about how she fell on the date in question are admissible as exceptions to the

hearsay rule. (Docket No. 178 at ¶¶ 7-12; Docket No. 179 at 6-10). Plaintiffs also argue that they have presented sufficient evidence to show that the actions of Mountaineer and its agent, Barnhart, were the proximate cause of Mrs. Polansky's slip, fall, and injuries. (Docket No. 191 at 1-4).

    c. Negligence, Cause in Fact, and Proximate Cause

With that background, the Court turns to the relevant law. The parties agree that Pennsylvania law controls this lawsuit. *Rochez Bros., Inc. v. North American Salt Co., Inc.*, 1994 WL 735932, at *6 n.8 (W.D. Pa. Nov. 2, 1994) (citing *Schiavone Construction Co. v. Time, Inc.,* 735 F.2d 94, 96 (3d Cir. 1984)) ("Because the parties appear to implicitly agree on the applicable choice of law, this Court will not challenge their decision"). They further acknowledge that the loss of consortium claim is derivative of the negligence claim such that if the negligence claim were to be dismissed, the loss of consortium claim must also be dismissed. *See, e.g., Newton v. Norfolk Southern Corp.*, 2008 WL 55997, at *7 (W.D. Pa. Jan. 3, 2008) (Fischer, J.) (citing *Beswick v. Maguire,* 748 A.2d 701, 705 (Pa. Super. Ct. 2000); *Little v. Jarvis,* 280 A.2d 617, 620 (Pa. Super. Ct. 1971)).

Under Pennsylvania law, "[i]t is axiomatic that the elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss." *Minnich v. Yost*, 817 A.2d 538, 541 (Pa. Super. Ct. 2003) (citing *Campo v. St. Luke's Hospital,* 755 A.2d 20 (Pa. Super. Ct. 2000)); *see also Phillips v. Nw. Reg'l Commc'ns*, 669 F. Supp. 2d 555, 578 (W.D. Pa. 2009), *aff'd sub nom. Phillips ex rel. Estate of Phillips v. Nw. Reg'l Commc'ns*, 391 F. App'x 160 (3d Cir. 2010).

In the instant case, only the causation element is in dispute. To prove causation under Pennsylvania law, Plaintiffs must demonstrate that Mountaineer's conduct was both a cause in fact and proximate cause of the harm. Specifically,

> Cause in fact or "but for" causation requires proof that the harmful result would not have come about but for the conduct of the defendant. Proximate cause, in addition, requires proof that the defendant's conduct was a substantial contributing factor in bringing about the harm alleged. Where the relevant facts show either that the defendant was not responsible for the injury, or that the causal connection between the defendant's negligence and the plaintiff's injury is remote, the question of causation is decided by the court as a matter of law.

*Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 366-67 (3d Cir. 1990). "[T]he term 'cause in fact' embraces all things which have so far contributed to the result that without them it would not have occurred." W. Page Keeton Et Al., *Prosser and Keeton on the Law of Torts* § 41, at 265 (5th ed. 1984). It is the plaintiff's burden to prove that the harm suffered was caused, both factually and legally, by the defendant and that burden must be sustained by a preponderance of the evidence. *Hamil v. Bashline,* 392 A.2d 1280, 1284 (Pa. 1978). Cause in fact is typically a factual question for the jury, however, the issue of cause in fact may not be given to the jury if it would require guessing or speculation to determine cause. *Smith v. Bell Tel. Co. of Pa.,* 153 A.2d 477, 479 (Pa. 1959) ("We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based."). Proximate cause is generally a question of law that may be decided by the Court on summary judgment. *Reilly v. Tiergarten, Inc.,* 633 A.2d 208, 210 (Pa. 1993); *Cuthbert v. City of Philadelphia,* 209 A.2d 261, 264 (Pa. 1965).

    d. Analysis

        i. Cause in Fact

The Court first evaluates the evidence as to cause in fact. As noted, the but for cause of an accident is typically a factual question for the jury, except when such a question involves guessing or speculation. *Smith,* 153 A.2d 477, 479 (Pa. 1959). In light of these principles, Mountaineer challenges the factual underpinnings of Mrs. Polansky's slip, fall, and injuries. More specifically, Mountaineer maintains that Plaintiffs are relying on inadmissible hearsay statements to establish how Mrs. Polansky's fall occurred. (Docket No. 185 at 2-5).

The law of this Circuit is well established that hearsay statements can be utilized to raise a genuine dispute of material fact to defeat a motion for summary judgment if such statements are capable of admission at trial. *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223 n.2 (3d. Cir. 2000). Here, Plaintiffs assert that Mrs. Polansky declared to her husband immediately after she fell that she had fallen after slipping on the wet surface of the deck. (Docket No. 180 at ¶ 42). They also maintain that Mrs. Polansky told her medical treaters, including Gregory B. Christiansen, M.D., that she was injured due to her slipping and falling on the wet surface of the deck at her home. (Docket No. 180 at ¶ 43). They invoke the present sense impression and medical treatment exceptions to the hearsay rule set forth in Rules 803(1) and 803(4) of the Federal Rules of Evidence.[10]

As this Court recently held in *Gucker v. U.S. Steel Corporation*, 2016 WL 379553, at *3 (W.D. Pa. Jan. 31, 2016), "[b]efore hearsay evidence is admissible as a present sense impression, the declarant must have personally perceived the event described, the declaration must be an explanation or description of the event rather than a narration, and the declaration and the event described must be contemporaneous." (citing *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998)). In this case, Mr. Polansky heard his wife's cries for help, immediately rushed to her

---

[10] Plaintiffs also argue that Mrs. Polansky's statement is admissible as an excited utterance but the Court need not rule on this alternative theory. *See U.S. v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001).

aid, and observed her lying in a pool of water on the deck at which point she told him she had "slipped on the water on the deck and fallen and hurt her ankle." (Docket No. 181-2 at ¶ 7). At the time, Mr. Polansky contemporaneously observed that his wife "was visibly in pain and upset." (Docket No. 181-2 at ¶ 8). While Mountaineer refers to Mr. Polansky's affidavit as "self-serving," (Docket No. 185 at 7), it nonetheless is sufficient to invoke the present sense impression exception to the hearsay rule. Further, when considering such evidence in the light most favorable to Plaintiffs, as this Court must at the summary judgment stage, it supports their theory as to what caused Mrs. Polansky's slip, fall, and injuries.[11]

Likewise, Mrs. Polansky's later statements to her medical providers about the cause of her accident may be admitted through the medical treatment exception codified at Rule 803(4). That section provides that:

> A statement that:
> (A) is made for--and is reasonably pertinent to--medical diagnosis or treatment; and
> (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause.

FED. R. EVID. 803(4). Courts have recognized that "[a] statement should be admitted under Rule 803(4) to the extent that it describes the cause of a patient's injuries" but not to the extent that such statement alleges fault of a third party. *Greco v. National R.R. Passenger Corp.*, 2005 WL 1320147, at *8 (E.D. Pa. Jun. 1, 2005). Having reviewed the medical reports, the Court agrees that the statements attributed to Mrs. Polansky contained therein are within the medical treatment exception. To this end, Mrs. Polansky provided her medical treatment providers, including Dr. Christiansen, with information concerning the cause of her injuries for the purpose of receiving

---

[11] The Court notes that the affidavit cannot be excluded under the sham affidavit doctrine because Mr. Polansky was not questioned during his deposition about statements concerning his wife's fall that she made to him or anyone else. (*See* Docket No. 179 at 9). *See, e.g., Johnson v. Dunkin' Donuts Franchising L.L.C.*, 2014 WL 2931379, at *14-17 (W.D. Pa. June 30, 2014) (Fischer, J.), *aff'd* (3d Cir. 2015). Hence, the information in this affidavit does not contradict his prior testimony. *Id.*

medical treatment. *See White v. Illinois*, 502 U.S. 346 (1992).

In conclusion, Plaintiffs have presented admissible hearsay statements attributable to Mrs. Polansky in order to establish how her slip and fall accident occurred on April 23, 2011. It is this Court's opinion that, when coupled with the other evidence of record, Plaintiffs have met their burden to establish a genuine dispute of material fact regarding but for causation. *See Burton*, 707 F.3d at 425 (citation omitted) ("A fact is material if it might affect the outcome of the suit under the governing law."). Moreover, as the Court discusses in the next section of this Opinion, the evidentiary link connecting the actions of Mountaineer that may have contributed to the water "pooling" on the deck and the resulting accident to Mrs. Polansky is disputed as to both of Plaintiffs' liability theories: Mountaineer's alleged faulty design of the log cabin home and/or the alleged recommendation by Mountaineer's agent, Barnhart, that the Polanskys hire Vail Homes as a contractor. *See Robertson,* 914 F.2d at 366-67.

ii. Proximate Causation

The Court next addresses the evidence as to proximate causation. Again, proximate cause "requires proof that the defendant's conduct was a substantial contributing factor in bringing about the harm alleged." *Robertson,* 914 F.2d at 367. Summary judgment may only be granted on this element if there is no genuine dispute of material fact and no reasonable jury could find in favor of Plaintiffs. *See Montone*, 709 F.3d at 192.

Mountaineer's position in this litigation is essentially that the cause of Mrs. Polansky's injuries is solely attributable to the faulty construction work by Vail Homes and its operators. (Docket No. 172 at 10-11). Despite the written disclaimer executed in November of 2009, wherein the Polanskys agreed that Mountaineer had not made any representations concerning the contractors on the provided list, the parties plainly dispute whether Barnhart, on behalf of

Mountaineer, later recommended that the Polanskys hire Vail Homes and the scope of that recommendation. (Docket No. 172 at 3; Docket No. 180 at ¶ 36). Those disputes include, but are not limited to whether Mountaineer was aware of: the competence of Vail Homes and its operators and their past history, if any, with constructing log cabin homes. (Docket No. 185 at 7). The testimony of Barnhart and Mr. Polansky concerning their conversations clearly conflicts such that any resolution of the factual conflicts must be determined by a jury, making the entry of summary judgment for Mountaineer inappropriate. Moreover, as Barnhart accepted a referral fee from Vail Homes, his credibility is at issue. Credibility should be determined by the jury. *See, e.g., Gomez v. Markley,* 2011 WL 2580410, at *6 (W.D. Pa. June 28, 2011) (Fischer, J.) *aff'd*, 493 F. App'x 334 (3d Cir. 2012) ("Because it is the jury's role to determine the credibility of the witnesses and to weigh the evidence, the Court will not substitute its judgment . . . for that of the jury.") (citations omitted). *See also McDaniel v. Kidde Residential & Commercial*, 2015 WL 5972438, at *2 (W.D. Pa. Oct. 14, 2015) (Fischer, J.) (same).

Furthermore, there is a clear conflict in the evidence regarding whether the pooling condition on the deck was caused by a design problem attributable to Mountaineer. On this issue, the parties have presented the opinions of competing construction experts. (Docket Nos. 155-5, 174-13). Both experts generally agree that the pooling condition on the deck resulted from problems with the construction work by Vail Homes, including the faulty installation of the shingles and that the deck boards were too narrowly constructed. However, Plaintiff's expert, Steding, also opines that the pooling condition is attributable to the design of the gutters which he believes were too small to prevent excess water from hitting the deck. (Docket No. 155-5 at 2). In direct contrast, Defendant's construction expert, Frank C. Thompson, maintains that the pooling condition was not caused by any feature of the home's design. (Docket No. 174-13 at

4). This type of factual dispute also involves a credibility assessment that must be resolved by a jury. To be sure, the Court fully expects, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden on proof," at the time of trial regarding all of the issues the parties raise in their respective briefs. *Corner Pocket, Inc. v. Travelers Ins.*, 2013 WL 3993967, at *6 (W.D. Pa. Aug. 5, 2013) (Fischer, J.). *See also Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2012 WL 5989194, at *3 (W.D. Pa. Nov. 29, 2012) (Fischer, J.).

With respect to the remoteness in time between the interactions of the parties in late 2009 through spring of 2010 and the occurrence of the accident in April of 2011, the Court finds that the same is not conclusive and cannot support the entry of summary judgment for Mountaineer. Pennsylvania courts have generally not attached great significance to the lapse of time in order to eliminate a defendant's responsibility. *See, e.g., Ford v. Jeffries*, 379 A.2d 111, 114 (Pa. 1977) & *Taylor v. Jackson*, 643 A.2d 771, 776 (Pa. Commw. Ct. 1994). Further, the length of time between Mountaineer's conduct and the accident is not so remote under Pennsylvania law such that this Court can conclude that Mountaineer is not responsible as a matter of law on summary judgment. Additionally, Plaintiffs seek damages against Mountaineer related to both the property damage to their home and the injuries of Mrs. Polansky. (Docket No. 155 at 4). The property damage necessarily occurred during the home's construction by Vail Homes. Viewing the evidence in light most favorable to Plaintiffs, as the Court must, liability may be attributable to Mountaineer either by way of the recommendation of Mountaineer or its own faulty design work. Again, there are genuine disputes of material fact and a reasonable jury could find in Plaintiffs' favor.

Altogether, the movant has not shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Indeed,

the parties dispute a number of material facts that may "affect the outcome of the suit under the governing law." *Burton*, 707 F.3d at 425. Given same, a reasonable jury could return a verdict for Plaintiffs. *Montone*, 709 F.3d, at 192. Therefore, it would be inappropriate to grant Mountaineer's motion.

VI. CONCLUSION

Based on the foregoing, Defendant's Motion for Partial Summary Judgment has been DENIED. (Docket No. 195).

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated May 10, 2016

cc/ecf: All counsel of record.